[No. 13578.   In Bank.—January 4, 1891.]

JANE ANN CLAVEY, ADMINISTRATRIX, ETC., ET AL.,
APPELLANTS, *v.* JOSEPH LORD, RESPONDENT.

APPEAL—REVIEW OF EVIDENCE—CREDIBILITY OF WITNESSES—FINDING RENDERED IMMATERIAL.—The findings of the court below will not be disturbed upon appeal, when there is evidence to support them, and nothing appears in the record to show that the court did not justly estimate the credibility of the witnesses; nor will a particular finding be disturbed, if other findings, justified by the evidence, render the issue immaterial.

VERDICT IN EQUITY CASE—POWER OF COURT.—The verdict in an equity case is only advisory to the court until adopted, and the court may of its own motion disregard it and set it aside.

DELAY IN SETTING ASIDE VERDICT—WAIVER OF OBJECTION.—The fact that no action was taken by the court in respect to the verdict for three months after it was rendered, and after each party had moved for judg-

ment upon it, is no objection to the action of the court in then disregarding it, and hearing additional evidence, it not appearing what was the cause of the delay, or that any objection thereto was urged by the appellants.

ID. — OPENING CASE FOR FURTHER EVIDENCE — DISCRETION. — It is within the discretion of the court to permit further evidence, when it sets aside the verdict in an equity case; and if both parties are permitted to introduce additional evidence without any apparent restriction, and there is no showing of surprise, or of want of opportunity to produce any additional available evidence, no abuse of discretion appears.

LIMITS OF DISCRETIONARY POWER — ABUSE OF DISCRETION. — Discretionary judicial power may be exercised either way, and the only limitation upon its exercise is, that it must not be abused; and while it may be difficult to define what is meant by abuse of judicial discretion, one of its essential attributes is, that it must plainly appear to effect injustice.

EVIDENCE — IMPEACHMENT OF WITNESS — CONTRADICTORY STATEMENT AFTER TESTIMONY GIVEN — INSUFFICIENT OBJECTION. — The question of the admissibility of evidence offered for the impeachment of a witness, by showing that *after* his testimony was given he° had made contradictory statements, *is not raised by an objection that no proper foundation had been laid for impeachment, if the objection was expressly limited to evidence of *prior* contradictory statements.

ID. — IMMATERIAL EVIDENCE — HARMLESS ERROR — APPEAL. — Where evidence, admitted against objection, relates only to an issue which is rendered immaterial by the evidence and findings upon other issues, which are decisive of the case, any error in its admission is harmless, and is not ground for reversal of the judgment.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The facts are stated in the opinion.

*James H. Budd,* and *F. D. & G. W. Nicol,* for Appellant.

*F. W. Street, E. A. Rodgers,* and *J. C. Campbell,* for Respondent.

VANCLIEF, C. — The first count of the complaint in this action alleges that the decedent, in his lifetime, verbally contracted with the defendant to deliver to the latter a large number of stock cattle, which the defendant was to herd, pasture, feed, and care for, in consideration of which the defendant was to have one half of the increase of said cattle, but was to return or account to the

decedent for all the cattle originally delivered, and one half the increase, at the expiration of the contract. The contract did not fix or state the time during which the defendant was to keep the cattle, but it is alleged that he kept them until William Clavey died,—June 25, 1885. Nor is the date of the contract alleged, but it appears that it was made in 1875.

It is further alleged, on information and belief, that the deceased delivered to the defendant, under the contract, "about 140 head of stock cattle," which defendant kept, according to the contract, and "that the increase of said cattle, while in possession of the defendant under said contract, amounted to many hundreds."

It is further alleged, on information and belief, that during the lifetime of William Clavey, there was no accounting between him and defendant in regard to the cattle, and that no accounting or settlement has been made between plaintiffs and defendant in regard to the cattle since the death of William Clavey.

In the second count it is alleged, on information and belief, that during the lifetime of the deceased, he and defendant entered into a verbal contract, "by the terms of which they were to purchase large tracts of land in Tuolumne County, the same to be held by them in common"; that under said contract, "Clavey furnished to defendant large sums of money with which to purchase and pay for his (Clavey's) interest in the aforesaid land," and that defendant, "with said money, and money of his own, and under said agreement, did purchase large tracts of land, the deeds and conveyances of which were taken in the name of defendant, and in trust, however, for the joint benefit of himself and said Clavey, each of whom owned an undivided half thereof"; that the defendant still holds the title to said lands, and "refuses to account to plaintiffs therefor, or for the rents and profits of the land, or for the money invested therein by Clavey, and refuses to make any statement of his trust under

said contract, all of which has been demanded by plaintiffs."

The prayer of the complaint is: 1. That defendant account for the cattle under the contract first alleged; and 2. That he account for all money received by him for the purchase of land under the contract, alleged in the second count, and for all lands purchased therewith, and for the rents and profits thereof.

The answer of the defendant admits a contract in regard to the cattle, but with the additional terms that the defendant was authorized to deal with, sell, and dispose of the cattle and the increase, as his own, during the time he should keep them, and account to Clavey for the proceeds of such sales, and that defendant was not to be liable for loss of cattle by death or otherwise; and also that defendant was to hold said cattle as security for all debts due the defendant from Clavey; and denies that Clavey delivered to defendant more than seventy-seven head of cattle under the contract; denies that there had been no accounting and settlement with Clavey and the defendant; but alleges that at divers times he had accounted to and settled with Clavey, during his lifetime, for all matters pertaining to the cattle contract, and that in March, 1887, he had accounted and settled with the plaintiffs for all the cattle and increase thereof that remained in his possession after the death of Clavey.

The answer also denies all the material allegations of the second count.

Twenty-five special issues, framed by counsel for the respective parties, were submitted by the court to a jury, and on April 7, 1888, the jury returned a verdict in favor of the plaintiffs upon all the issues except one, as to which the jury failed to agree.

Thereupon each party asked for judgment on the special verdict; but no further action appears to have been taken by court or counsel until July 14, 1888, when defendant's counsel asked permission to introduce further evidence,

which was allowed by the court against the objection of plaintiffs' counsel.

After hearing the additional evidence, the court set aside the special verdict, and upon all the evidence made written findings in favor of the defendant, and rendered judgment accordingly.

The plaintiffs appeal from the judgment, and from an order denying their motion for a new trial.

The court found the cattle contract to have been as stated in defendant's answer, and that defendant received only seventy-seven head of cattle under the contract, and further found, in regard to the cattle transaction, as follows: —

"6. That during the lifetime of said Clavey, defendant and said Clavey had frequent settlements and accountings in regard to the cattle so received, and the increase thereof, and that at each of said settlements defendant fully settled with said Clavey for all of the cattle sold, and the increase of said cattle;

"7. That on or about the 10th day of March, 1887, defendant delivered to plaintiffs herein, the administratrix and administrator of the estate of the said William Clavey, deceased, all of the cattle that remained in defendant's possession, whether the same were orignal stock cattle or the increase of said stock cattle, and the plaintiffs herein received the same;

"8. That at the time of the commencement of this action, defendant did not have in his possession any of the original stock cattle received from William Clavey, nor any of the increase of the original stock cattle so received, nor any of the proceeds of the sale of said cattle or the increase thereof, but had fully accounted to said Clavey during his lifetime for the increase of said cattle, and the proceeds from the sale of the same, and had turned over to said plaintiffs all of the cattle that they were entitled to receive under the terms of said contract."

Upon all the issues in the second count, the court found in favor of defendant.

1. Many of the findings are attacked on the ground that they are not justified by the evidence. But I think all the findings, except that as to the number of cattle delivered to defendant under the contract, are sustained by a preponderance of evidence; and the finding as to the number of cattle delivered is supported by the positive testimony of the defendant and of the witness Richards, opposed to the positive testimony of John Loney and the rather indefinite testimony of McFarland for the plaintiffs. There was an attempt by each party to discredit the witnesses of the other as to the number of cattle; but there is nothing in the record from which it can be seen or determined here that the court did not justly estimate the credibility of the witnesses. Besides, if the sixth, seventh, and eighth findings, as to settlements with the deceased and plaintiffs, are justified by the evidence, as I think they are, they are controlling, and render the issue as to the number of cattle immaterial.

2. It is insisted by appellants that the court erred in hearing additional evidence three months after the verdict of the jury was rendered, and in disregarding the verdict of the jury.

When the verdict was rendered, each party moved for judgment upon it, and it does not appear why the court did not further act in the case until three months thereafter; yet it does not appear that the delay was objected to by the appellants.

If the court disagreed with the verdict of the jury, there should be no question that it had the power to disregard and set it aside of its own motion, since, until adopted by the court, it was only advisory. (*Johnson* v. *Powers*, 65 Cal. 179; *Sweetser* v. *Dobbins*, 65 Cal. 529; and other cases.)

The only remaining question under this head is, whether the court erred in permitting the defendant to introduce

further evidence without showing cause therefor by affidavit.

It was undoubtedly within the discretionary power of the court to permit further evidence, under the circumstances disclosed by the record. (*Foote* v. *Richmond*, 42 Cal. 441; *Barry* v. *Bennett*, 45 Cal. 80; *Keys* v. *Warner*, 45 Cal. 60; *Abbey Homestead Ass'n* v. *Willard*, 48 Cal. 615; *Cousins* v. *Partridge*, 79 Cal. 224; *First Nat. Bank* v. *Wolff*, 79 Cal. 70.) And no abuse of that power appears. Both parties were permitted to introduce additional evidence without any apparent restriction, and both parties did introduce additional evidence. There is no complaint that the plaintiffs were surprised, or were not allowed ample opportunity to procure and introduce evidence in rebuttal or in chief, nor does it appear that plaintiffs failed to procure any additional evidence desired which would have been available under other circumstances.

Conceding that the court might have denied the motion to admit further evidence without any apparent abuse of discretion, as in the case of *Kohler* v. *Wells, Fargo & Co.*, 26 Cal. 613, cited by respondent, it does not necessarily follow that it was an abuse of discretion to grant the motion; for in cases where the decision is governed entirely by the discretion of the court, it may often happen that a decision in favor of either party would not appear to be an abuse of discretion. To say that the law allows no latitude for the exercise of discretionary power, is to deny that the power is discretionary. The only limitation that the law has placed upon the exercise of discretionary judicial power is, that it must not be abused. While it may be difficult to define exactly what is meant by abuse of judicial discretion, and whatever it may imply as to the disposition and motives of the judge, it is fairly deducible from the cases that one of its essential attributes is, that it must plainly appear to effect injustice.

3. On the trial before the jury, McFarland testified for the plaintiff as to the number of cattle delivered to

the defendant. On the trial before the court three months later, the defendant offered to prove by his witness Preston that after McFarland had testified, he made a statement, in regard to the number of cattle, inconsistent with his testimony before the jury. Thereupon the following objection by counsel, and ruling by the court, were made:—

*Mr. Nicol.*—"I object, upon the ground that no proper foundation has been laid to impeach his testimony."

*Mr. Budd.*—"If it was not after he had testified, he cannot be impeached in that way."

*Mr. Campbell.*—"It was after."

*The Court.*—"Answer the question."

*Mr. Budd.*—"Plaintiff excepts."

The witness then testified to a statement by McFarland, made after he had testified before the jury, inconsistent with his testimony before the jury.

Counsel for appellants contend that the admission of Preston's testimony was error.

I think, however, that the objection as modified by Mr. Budd, who appears to have been the leading counsel for plaintiffs, was no objection to proving what McFarland said *after* he testified before the jury; and the objection must have been so understood by the court and counsel for defendant.

4. The deposition of J. W. Tullock, assessor of Stanislaus County, was offered in evidence by defendant, to show how many cattle were assessed to Clavey in 1874. The plaintiffs objected to questions numbered 7, 8, 9, 10, and 11. Their objection was sustained as to 9 and 10, but was overruled as to 7, 8, and 11. Those questions were as follows:—

"No. 7. State whether or not the assessment-list of that year contains certain cattle belonging to the said Clavey.

"No. 8. State just what the assessment-book shows with reference to these cattle, with regard to number, value, and quality."

"No. 11. State whether or not the 124 head of cattle above referred to include all the cattle which were assessed to William Clavey in 1874."

The answers to these questions appear to have been read by the witness from page 22 of the assessment roll of 1874, showing that 124 head of cattle, and no more, had been assessed to Clavey that year, and that "124 head of stock cattle had been removed to Tuolumne County."

The grounds of the objections were, that No. 7 was incompetent, irrelevant, and not the best evidence; the same as to No. 8, and also that it does not appear who made the assessment, or that Clavey signed or had anything to do with it, and that No. 11 did not ask for the best evidence.

It is claimed by appellants' counsel, that the court erred in overruling their objections to the questions numbered 7, 8, and 11.

If there was error in any of these rulings, it was harmless. The evidence objected to tended to prove only that Clavey owned no more than 124 head of cattle at the time of the assessment in 1874, and therefore could not have been applied to any other issue than that as to the number of cattle delivered to defendant. It had no bearing whatever upon the issues as to settlements, and could not have influenced or contributed to the findings upon these issues. These findings are controlling, and dispose of the case in favor of the respondent, without regard to the number of cattle delivered.

5. Several other exceptions to rulings of the court were taken, but they appear to be either grounded upon misapprehension of the facts, or unimportant in view of the settlements found.

I think the judgment and order should be affirmed.

FOOTE, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.