[S. F. No. 3880.  In Bank.—November 12, 1904.]

In the Matter of the Contested Election of THOMAS W. TREANOR, Contestee, Appellant, v. C. R. WILLIAMS, Contestant, Respondent.

ELECTIONS—CONTEST—INSUFFICIENT DEPOSIT OF BALLOTS—ERROR NOT SHOWN.—Where it was stipulated that all of the ballots objected to by either party should be withdrawn from the clerk's office by the party appealing, and be deposited with the clerk of this court, and the contestee appellant only deposited twenty-eight out of two hundred and fifty-one ballots rejected for the contestant, and no other ballots were deposited, no error is shown in counting or rejecting any of them.

ID.—STATEMENT OF CONTEST—RESULT OF CANVASS—NUMBER OF LEGAL VOTES CAST—ISSUES—FINDING—VARIANCE—SUPPORT OF JUDGMENT. —Where the statement of contest showed the result of the canvass by the election board in counting 4,862 votes alleged to have been cast for the contestee, without alleging that they were legally cast, and also alleged misconduct of election boards in counting for the contestee ballots which were actually cast for the contestant, and further alleged that the contestant received 5,083 legal votes, and that the contestee received a less number of legal votes than the contestant at said election, and the case was tried without objection, upon the theory that the court was called upon to decide which of the parties actually received the greatest number of legal votes, a finding that the contestant received 4,004 legal votes and that

the contestee received 4,001 legal votes does not show a material or prejudicial variance from the statement as to the 4,862 votes, and is sufficient upon appeal to support a judgment for the contestant. [Beatty, C. J., dissenting.]

Id.—Illegal Ballots—Distinguishing Marks.—The court did not err in rejecting all ballots as illegal which had crosses after the words "No nomination," as containing a distinguishing mark. The fact that there were a large number of such ballots does not affect the rule; and the intent of the voter cannot be shown other than by what appears upon the face of the ballot.

Id.—Integrity of Ballots.—Where the pouches containing the ballots were shown to have come from the clerk's office in the same condition as when they were received there, and there was no circumstance to raise a suspicion as to their integrity, an objection to the opening of the pouches by the court is without merit.

Id.—Purity of Election Law—Irrelevant Question.—The question whether contestant had complied with the Purity of Election Law, and as to the failure of the court to find thereupon, need not be considered. The matter is irrelevant to an election contest.

APPEAL from a judgment of the Superior Court of the County of Santa Clara. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

James H. Campbell, and S. F. Leib, for Appellant.

A. H. Upton, and Rogers, Bloomingdale & Free, for Respondent.

McFARLAND, J.—This is a contest over the office of county recorder of the county of Santa Clara, arising out of an election for that office held in November, 1902. Upon the returns of the election boards the board of election canvassers declared that Thomas W. Treanor had received the highest number of votes for said office and was elected, and a certificate of his election was issued and delivered to him. Thereupon C. R. Williams, who had been a candidate for said office at said election, duly instituted this contest. The court below found that Williams had received 4,004 legal votes, and Treanor only 4,001 legal votes, and rendered judgment for Williams. From this judgment Treanor appeals.

It appears from the record that the court examined all the votes that had been received at the election, and rejected a great many that had been counted by the election boards for

the contestee, Treanor, and also rejected a large number of votes which had been so counted for contestant, Williams. It was stipulated that none of the ballots offered in evidence need be copied into a bill of exceptions or statement, but that all of the ballots objected to by either of the parties should be withdrawn from the clerk's office *"by the party* who should appeal to the supreme court from the judgment that might be rendered in the action to which he is a party, and be deposited with the clerk of the supreme court upon filing his transcript on appeal," and that they might be used on the hearing here as though they had been copied into the bill of exceptions. Under this stipulation appellant has deposited with the clerk of this court, and thus brought to our attention, only twenty-eight of such ballots. But these ballots so brought here are of no materiality whatever, because they all contain votes for contestant which were rejected by the court. The record shows that "the court, upon objection of the contestee, rejected 251 of said ballots on the grounds" (naming several specific objections) "said ballots having been counted for contestant by the boards of judges and election officers of the respective precincts." The record further shows that "the said contestee, Treanor, specially objected to each of the following ballots containing a vote for said contestant Williams, said ballots *being a portion* of the 251 ballots above mentioned"; and then follows a reference to each of the said twenty-eight ballots deposited with the clerk of this court, and certain specific objections to each. We can see no purpose in this, unless it be that the contestee was fearful that the grounds on which the court rejected said ballots might turn out to be untenable, and he desired to add further grounds; but as 251 ballots, including the said twenty-eight ballots, which had been counted for contestant by the election boards were actually rejected by the court, the contestee has nothing to complain of on this point. And as none of the other ballots—amounting to several thousands—are here, we have nothing before us to show whether or not the court committed any error in counting or rejecting any one of those ballots. The judgment must therefore be affirmed, unless appellant has some valid objection to its validity which goes to some point other than the ruling of the court on particular ballots; and we do not think there is any such valid objection.

The main objection is, that the court found that contestee received only 4,001 legal votes, and that this finding is at variance and in conflict with an alleged averment in the complaint, or "statement of contest," that contestee received 4,862 legal votes. But there is no specific averment that contestee received 4,862 legal votes. There is an averment that the election boards counted for the contestee, Treanor, "ballots which were not cast or voted for said contestee, but were cast and voted for this contestant, for said office"; and there is an averment that in a tabulated statement attached to the complaint designated as exhibit A, column G thereof, which foots up 4,862, shows the votes actually cast in said respective precincts for said Thomas W. Treanor; and appellant's contention is, that this last averment as to column G precluded respondent from claiming, and the court from finding, that appellant had less than 4,862 legal votes. But taking the two averments above mentioned together, the phrase "actually cast" in the latter averment is apparently used in the same sense as in the former averment, where it clearly means that ballots containing the name of contestant were "counted and tallied or caused to be read" for contestee. And this would be a warrantable construction even if the rules applicable to ordinary civil actions applied here; while under the provisions of the code relating to election contests a "statement of contest" is sufficient if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which said election is contested. (Code Civ. Proc., sec. 1117. See *Abbott* v. *Hartley*, 143 Cal. 484.) The statement in the case at bar alleges various acts of misconduct by the election boards by which votes were counted for contestee which should not have been counted for him, and votes which should have been counted for contestant which were not so counted, and then avers that contestant actually received 5,083 or more "legal votes" and that the contestee "actually received a less number of legal votes than the contestant at such election." These averments fully present the real question which the court was called upon to decide—namely, who of the two parties actually received the greater number of legal votes. The case was tried on this theory without objection, and the attention of the court was not in any way called to what is now claimed to be

a variance; and it is quite clear that appellant was in no way prejudiced by the alleged variance, even if it could be held that there was such a variance.

It is contended that the court erred in rejecting ballots because they had crosses after "No nomination"; but this point has been definitely settled against appellant's contention, and the fact that there were a large number of such ballots does not affect the rule (*McMenomy* v. *Ruch*, 142 Cal. 77; *Merkley* v. *Trainor*, 142 Cal. 265); and the intent of the voter in making the distinguishing mark "cannot be shown other than by what appears upon the face of the ballot." (*Maddux* v. *Walthall*, 141 Cal. 412.)

The objection to the opening of the ballot-pouches was without merit; they came from the clerk's office in the same condition as when received there, and there was no circumstance whatever to raise the slightest suspicion of their integrity.

The objections to contestant's want of compliance with the Purity of Election Law, and the fact that the court did not find on that subject, need not be considered; whether or not a contestant had complied with that law is a matter irrelevant to an election contest. (*Maddux* v. *Walthall*, 141 Cal. 412.)

As to the matter of voters who were illegally assisted, we cannot say, upon the evidence in the record, that the court erred in holding that not more than four of them voted for contestant. There is not even a fair doubt of the correctness of the ruling of more than one, or at the utmost two, of the other votes, and a different ruling as to them would not change the result.

There is no other point made by appellant that is tenable or that calls for special notice.

The judgment appealed from is affirmed.

Angellotti, J., Van Dyke, J., and Henshaw, J., concurred.

SHAW, J., concurring.—I concur in the judgment on the ground that the case having been tried and submitted to the court below on the theory that the pleadings did not contain a conclusive admission that the contestee, Treanor, received 4,862 legal votes, it is too late in this court to present a differ-

ent construction of the pleadings, and claim here, for the first time, that the contestant is bound by the admission. (*King* v. *Davis,* 34 Cal. 106; *Lee* v. *Figg,* 37 Cal. 336;[1] *Hutchins* v. *Castle,* 48 Cal. 156; *Hughes* v. *Wheeler,* 76 Cal. 230; *Sukeforth* v. *Lord,* 87 Cal. 403; *Willey* v. *Crocker etc. Bank,* 141 Cal. 518.) I do not agree with the construction put upon the pleadings in this respect in the principal opinion. I concur in all other points.

BEATTY, C. J., dissenting.—I dissent. The finding that Treanor received only 4,401 votes is in conflict with the fact clearly established by the pleadings that he received 4,862 votes. If the evidence established the fact as found, the pleadings might have been amended to conform to the proofs, but they were not amended, and must prevail. I cannot see any grounds for holding that the case was tried upon any theory as to the effect of the pleadings which precludes the contestee from raising this objection to the findings. No doubt it is technical, but the whole contest is based upon grounds equally technical.

Rehearing denied.