[Civ. No. 108.   Third Appellate District.—October 27, 1905.]

## THE PEOPLE ex rel. W. B. HARDACRE, Respondent, v. H. L. DAVIDSON and FRANK PETERS, Appellants.

CONSTABLES—INVALID ELECTION—SINGLE OFFICE—CHANGE OF COUNTY GOVERNMENT ACT — QUO WARRANTO — PLEADING — AMENDMENT — CAUSE OF ACTION.—A complaint in *quo warranto* to oust two constables improperly elected after a change in the County Government Act providing for the election of but one constable in a township having a population of less than six thousand, which stated a cause of action against them for usurping and intruding into the office under certificates of election issued to them, though averring that one of them received a higher number of votes than the other, was not changed as to the cause of action by an amendment allowed at the trial, upon motion for nonsuit, averring that, upon nearly all of the ballots cast at the election two candidates were voted for, and that such ballots, together with those upon which but one candidate was voted for, were regularly counted and returned to the supervisors.

ID.—GENERAL DEMURRER—AVERMENT OF HIGHEST NUMBER OF VOTES—ABSENCE OF SPECIAL DEMURRER.—The complaint being sufficient against both defendants upon general demurrer is not, in the absence of a special demurrer for ambiguity or uncertainty, affected as to its sufficiency by the mere averment that one of the defendants received the highest number of votes, without averring that he received the highest number of legal votes.

ID.—POPULATION OF TOWNSHIP—SUPPORT OF MATERIAL FINDING—SUBSEQUENT CENSUS—IMMATERIAL FINDING.—Where the evidence sufficiently supports the material finding that the population of the township, at the time of the election, as shown by prior enumerations, was less than six thousand persons, a subsequent census can have no bearing upon the issue, and another finding as to the specific number of inhabitants is immaterial.

ID.—VITAL QUESTION—ELECTION OF SINGLE PERSON TO SINGLE OFFICE.—
Where neither of the defendants holds by appointment, and neither
has the right to hold over after a former term, the sole vital ques-
tion is whether there was in fact an election of a single person
to the single office of constable, created by the amendment to the
County Government Act.

ID.—CERTIFICATES OF ELECTION—DECLARATION OF RESULT—PRESUMP-
TIONS.—The presumption applicable to an ordinary certificate of
election of a right to the office does not apply where certificates are
issued to two persons at the same time for the same office, which
both of them cannot hold; and where both of them are declared
elected, there can be no presumption in favor of either of them
from such declaration.

ID.—TABULATED STATEMENT—HIGHEST NUMBER OF VOTES—PRIMA
FACIE EVIDENCE OVERCOME—ILLEGAL BASIS.—A tabulated statement
of the votes, giving one of the defendants the highest number, is
only *prima facie* evidence of the facts recited, and such evidence
is overcome by the facts appearing that the board of supervisors
counted many more votes than were cast, and many more votes than
were registered in the township, thus showing that the basis
of the certificates and declaration of election is unreliable and il-
legal.

ID.—FAILURE OF RECORD TO SHOW ELECTION—CONTRARY PRESUMPTION.
Where the record provided by law for the purpose failed to show
the election of either of the defendants, the contrary presumption
arose, and in the absence of other evidence showing it, this pre-
sumption alone would justify the findings, conclusion, and judgment
of ouster against both of them.

ID.—LOSS OF BALLOTS—EVIDENCE OF ELECTION OFFICERS.—Where the
ballots were destroyed the evidence of the election officers was the
best in degree; and the admission of it was harmless, when the judg-
ment is sustained by the adverse presumption arising from the rec-
ords, and testimony showing the general manner of conducting the
election, and the large number of votes counted as compared with the
number of ballots cast.

ID.—EVIDENCE OF POPULATION—CENSUS—PROCLAMATION.—The last pre-
ceding federal and state census were admissible evidence of popula-
tion; but the election proclamation cannot be considered as con-
clusive or any evidence that the population of the township was more
than six thousand.

ID.—CONDUCT OF ELECTION—MAJORITY OF ILLEGAL VOTES—SINGLE BAL-
LOTS UNKNOWN—APPORTIONMENT IMPRACTICABLE.—Where it ap-
pears from the facts admitted and proved that the whole election
was conducted on the theory that two candidates were to be voted
for, and the great majority of the votes cast were illegal, and the
number of single votes is unknown, there is no basis upon which
to justify a *pro rata* deduction of illegal votes, or an apportionment
of legal votes, and all must be rejected.

Id.—Precincts without Evidence.—The fact that there were four precincts as to which no testimony was given by the election officers cannot show an election, where the general course pursued and the general theory upon which the election proceeded indicates that the conduct of the election was the same in all precincts, and the counting of those precincts as tallies would change the highest vote, by mere guesswork.

APPEAL from a judgment of the Superior Court of San Joaquin County. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

Ashley & Neumiller, for Appellant.

U. S. Webb, and C. W. Norton, for Respondent and Relator.

McLAUGHLIN, J.—We have this day affirmed the judgment in this action as to defendant Hersom. (See, *ante*, p. 96, 83 Pac. 159.) The present appeal is by the other defendants, on grounds not presented or considered on Hersom's appeal. Here, as there, it is conceded that under section 56 of the County Government Act, as amended in 1901 (Stats. 1901, p. 685, c. 234), but one constable could legally be elected at the general election held November 4, 1902, if the evidence shows that the population was less than six thousand at that time. The complaint, in addition to facts considered on the former appeal, contained the following averments, vital to this decision: "That at said election so held on said day defendant H. L. Davidson received the highest number of votes cast for constable of said O'Neal township, in the county of San Joaquin, state of California, and defendant Frank Peters received the next highest number of votes cast for constable of said township, *but on information and belief plaintiff alleges that upon nearly all the ballots so cast in said O'Neal township, at said election, two candidates were voted for for the office of constable for said township, and that all such ballots, together with those upon which but one candidate was voted for for the office of constable, were regularly counted and return made of the contents thereof to the board of supervisors of said San Joaquin county"*; that the board of supervisors duly and regularly

canvassed the returns of said election, and thereupon regularly issued to said defendants H. L. Davidson and Frank Peters certificates of election as constables of said township; that said Peters and said Davidson duly qualified, and on January 5, 1903, usurped, intruded into, and unlawfully exercised and held, and still pretend and claim to exercise and hold, such office of constable. Judgment was entered ousting appellants, and from such judgment and the order denying their motion for a new trial, they appeal.

At the close of plaintiff's case a motion for a nonsuit was made, and thereupon the complaint was amended by inserting the language above italicized. Appellants objected to such amendment, at that stage of the case, as tending to make a material difference in the status of and issues in the case. The amendment did not change the cause of action, and the objection interposed was properly overruled. (*Lee* v. *Murphy,* 119 Cal. 367, [51 Pac. 549, 955].) It is urged that the complaint states no cause of action. It appearing therefrom that two persons had been declared elected to one office, and had received certificates and qualified, and that both were performing the duties thereof, and were usurpers and intruders, the mere averment that one received the highest number of votes, without stating which received the highest number of legal votes, might be ground for a special demurrer for ambiguity or uncertainty, but, in the absence of such demurrer, the complaint was sufficient. (*Treanor* v. *Williams,* 145 Cal. 318, [78 Pac. 884]; *People* v. *Woodbury,* 14 Cal. 46; *People* v. *Reclamation Dist. 136,* 121 Cal. 522, [50 Pac. 1068, 53 Pac. 1085]; *People* v. *Clayton,* 4 Utah, 473, [11 Pac. 213].)

It is next claimed that the evidence is insufficient to sustain the findings. We think the evidence sufficient to support the finding that at the time the election was held the township contained a population of less than six thousand persons. The census taken some months afterward could have no bearing on this issue, and the other enumerations sustain the finding. This finding being ample to sustain the judgment in this regard, it is immaterial whether the other finding as to the specific number of inhabitants stands or falls. (*Hayden* v. *Collins,* 1 Cal. App. 259, [81 Pac. 1120]; *Costa* v. *Silva,* 127 Cal. 354, [59 Pac. 695]; *Clavey*

v. *Lord,* 87 Cal. 421, [25 Pac. 493].) And this rule renders immaterial other findings assailed but not specifically mentioned in' this opinion. The vital question in the case is presented by the contention that the findings adverse to the right of appellants to hold such office are not supported by the evidence, and that the facts so found do not support the conclusions of law and judgment. The only way to prove the right or absence of right to occupy a public office is to present facts upon which a claim of right to hold such office depends. The only evidence pertinent to such claim must relate to election, appointment, or the right to hold over after the expiration of the term. The appellants do not pretend to claim as appointees, and we have this day held that under the peculiar circumstances of this case neither of the occupants under the old system could hold over. (*People* v. *Hersom, supra.*) This boils our inquiry down to the single question of election. It must be conceded at the outset that but one person could be legally elected to or hold the office of constable of O'Neal township, and it has been held that, as far as the proclamation is concerned, the election was valid as to such office. (*Sanches* v. *Fordyce,* 141 Cal. 430, [75 Pac. 56].) It is claimed, however, that a certificate of election issued by the proper authority is *prima facie* or presumptive evidence of such right. This is the rule in ordinary cases. But in the case at bar certificates were issued to two persons for the same office, and manifestly the presumption invoked cannot apply to both. It cannot be presumed that one of these certificates was properly, and the other improperly, issued, especially when it appears that both were issued advisedly and at the same time. Under such circumstances the presumption fails by reason of the inherent uncertainty and inconsistency of the action of the board of supervisors and its ministerial officer. The record of the board is invoked as proving that one of the appellants was elected and that the certificate was properly and legally issued to him. Such record contains a detailed statement of the vote in each precinct, and a summary of the vote in the district as follows: H. L. Davidson, 421 votes; Frank Peters, 312; J. B. Blankenship, 282; W. C. Looper, 300. Immediately following the tabulated statement of the vote was this official declaration of election:

"On motion, duly carried, and in accordance with section 1236 of the Political Code of the state of California, the following named persons, having received the highest number of votes for the offices for which they were candidates, were duly elected as follows: For constable in O'Neal township, H. L. Davidson; for constable in O'Neal township, Frank Peters." As but one person could legally be elected to the office, it is apparent that uncertainty and inconsistency again forbid any presumption in favor of either of the persons so declared elected. The tabulated statement, however, shows the number of votes cast for each candidate, and it is insisted that, as appellant Davidson received the highest number of votes, this record establishes his right to the office. Standing alone, the record would unquestionably have that effect. But it must be borne in mind that such records are only *prima facie* evidence of the facts recited. (Code Civ. Proc., secs. 1920-1926; Pol. Code, sec. 1282 et seq.; *Merkley* v. *Trainor,* 142 Cal. 265, [75 Pac. 656].) And other evidence in the record absolutely overthrows the *prima facie* effect of such record. Computation, based on the tabulated statement, shows that 1315 votes were counted for said office by the canvassing board. The uncontradicted evidence of the county clerk proves that the number of registered voters in said township was 1003, and the number of ballots cast at said election, 868. It is thus made manifest that the board counted 457 more votes than were cast, and 312 more than the number of registered voters in the township. This again sets us adrift on the sea of uncertainty, for there is nothing in the record of the board, or in the evidence, to warrant a conclusion as to the number of legal votes cast for either of the candidates named. The tabulated statement thus impeached becomes as impotent to prove the election of anyone as the certificates and declaration of election just considered. Then, too, such extrinsic evidence not only overcomes the *prima facie* effect of the statement, but it shows that the basis of the certificates and declaration is absolutely unreliable and illegal. (*Russell* v. *McDowell,* 83 Cal. 79, [23 Pac. 183].)

The determination of a canvassing board, though ordinarily accepted as *prima facie* evidence of facts recited, fails to be evidence of any fact, when the presump-

tion attaching to official records is destroyed by showing that illegality, uncertainty and inconsistency, incapable of explanation, permeate and taint every proceeding as shown by such record. The right of any public official claiming to hold by election in such a proceeding as this rests primarily on evidence contained in public records we have mentioned; and, when it is shown that such claim has no foundation in these records, it follows as a necessary corollary that the claim falls with the foundation on which it must rest, and that, *prima facie,* the absence of any right to occupy the office is established. In other words, when this record, provided by law for such purpose, failed to show the election of either of the appellants, the contrary presumption arose, and in the absence of other evidence sustaining their claim, this alone would justify the findings, conclusion, and judgment here assailed. It is said that the course pursued in *Russell* v. *McDowell,* 83 Cal. 79, [23 Pac. 183], should have been followed by the learned judges of the trial court. But we do not see how this could be done without indulging in the wildest kind of guesswork. If this record presented the single fact that a definite number of illegal votes were counted, the novel method approved in that case might justly have been adopted. There, however, the court had seen and counted the ballots and knew exactly how many illegal votes had been cast. Here the ballots had been destroyed before the trial of the cause, and the court could not ascertain how many illegal ballots there were. It appears from the facts admitted and proved that the whole election, from proclamation to declaration of the result, and issuance of the certificates, was conducted on the theory that two candidates were to be elected in that township. Election officers from the different precincts testified that nearly all of the voters marked their ballots for two candidates, and that all such ballots were counted for two. But none of them pretended to say how many ballots were cast for only one candidate. The difference between this case and the case cited is thus made apparent. There but one name appeared on each illegal ballot, and a *pro rata* deduction furnished a novel, and perhaps good, way out of a dilemma: There such method was at least harmless. Here two names appeared on every illegal ballot, and the

number of "single shots," as counsel for appellant aptly styles the legal ballots cast, is unknown. It is not at all improbable that the names of the candidates having the highest number of votes appeared on every illegal ballot cast, and it is not impossible that the candidate having the lowest number may have received every legal vote. It will thus be seen that the trial court could have no definite starting point or basis to justify a *pro rata* deduction of illegal, or an apportionment of legal, votes. The only course, then, was to follow the other method suggested in *Russell* v. *McDowell*, at page 73 of 83 Cal., [page 184 of 23 Pac.], and reject the whole vote.

It is said that the court erred in admitting the evidence of the election officers. The ballots having been destroyed, such evidence was the best in degree, and we can find no rule of law, nor can we think of any rule of public policy, forbidding such testimony. Be that as it may, however, in the absence of such testimony, the adverse presumption arising from the records, and testimony showing the general manner of conducting the election, and large number of votes counted as compared with the number of ballots cast, would defeat appellants' claims, and hence such testimony was harmless, even if it was all erroneously admitted. (*Russell* v. *McDowell*, 83 Cal. 75, 77, 79, [23 Pac. 183] ; *McPhail* v. *Buell*, 87 Cal. 115, [25 Pac. 266] ; *Clavey* v. *Lord*, and cases cited, *supra*.) There was no error in admitting evidence touching the population as shown by the federal census and census taken in 1897.

The election proclamation issued by the board of supervisors cannot be considered as conclusive or any evidence that the population of the township was more than six thousand. The action was not barred by the statute of limitations. (Code Civ. Proc., secs. 343-345.)

The other rulings complained of were either correct, or, if erroneous, were harmless.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 25, 1905, and the following opinion was then rendered:

McLAUGHLIN, J.—A careful examination of the record, in the light of the petition for rehearing and recent decisions therein cited, has not shaken our confidence in the conclusion voiced in the decisions filed herein. The cases of *People ex rel. Russell* v. *Town of Loyalton,* 147 Cal. 774, [82 Pac. 620], and *People ex rel. Martin* v. *Worswick,* 142 Cal. 76, [75 Pac. 663], as far as applicable to the case at bar, simply lay down the rule that the burden is on the plaintiff to show that the illegal ballots were sufficient in number to make a difference in the result if deducted. We have never doubted either the existence or wisdom of this rule, nor do we question any of the rules laid down in cases of like character cited and examined. But the facts of the case at bar are very different from the facts in any case we have been able to find. In other cases the number of legal and illegal votes was ascertained, and there was some definite or certain basis for presumption or calculation. But in the case at bar there is nothing upon which the doctrine of probability, which always underlies a presumption, can rest. The certificates of election, standing alone, destroy each other, while the statement upon which such certificates must rest is impeached by proof that the canvassing board counted 447 more votes than there were ballots cast. This is more votes than any one candidate received altogether, and it needs only this statement to show that the illegal votes were sufficient in number to make a very great difference if deducted. It is conceded that the election officers proceeded upon the theory that two candidates were to be elected, and most of the ballots cast contained two names. There is nothing to show that any candidate received a single legal vote, and the evidence clearly shows that legal ballots were exceptions and illegal ballots were the rule.

It is said that there is no evidence showing that this was the case in four precincts. We inadvertently stated in the former opinion that officers of each precinct gave testimony to that effect. This was a mistake as to the four precincts referred to. But we think the general course pursued and the general theory upon which the election · proceeded is sufficient to indicate that the conduct of the election was substantially the same in all precincts. Counsel say we should have indulged the presumption that the election was

legally conducted in these four precincts, and hence have found for Davidson. But an examination of this question has demonstrated the dangerous uncertainty which would attend guesswork under such circumstances. If the votes cast in these four precincts were counted as tallied in the statement of the vote, a minority candidate, Peters, would have a majority of the votes. We think it sufficiently appears that neither of the claimants has a right to the office. Such rights depend on the records provided by law, and when it is shown that such records do not sustain a claim to public office, and are utterly unreliable, the claim falls. *Gibson* v. *Twaddle,* 1 Cal. App. 126, [81 Pac. 727], has no application to cases of this character.

The rehearing is denied.

Chipman, P. J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on December 26, 1905.