MAS ET AL. *v.* BORINQUEN SUGAR COMPANY.

APPEAL from the District Court of Humacao.

No. 771.—Decided April 26, 1912.

UNLAWFUL DETAINER—FIRST APPEARANCE—EXTENSION OF TIME.—The power to extend time is inherent in courts of justice and the provisions of section 4 of the Unlawful Detainer Act of 1905 should not be construed so strictly as to prohibit a district court from extending the time for the first appearance in an action of unlawful detainer for a period exceeding the 10 days provided for in said section.

ID.—FIRST APPEARANCE—EXTENSION OF TIME.—The fact that counsel for one party has an imperative engagement in a district court of another district is not sufficient of itself to warrant a court in extending time for the first appearance in an action of unlawful detainer.

ID.—DISCRETIONARY POWER—APPEAL.—The refusal of a trial court to exercise the discretion vested in it to extend time for appearance on the ground of lack of power therefor is reviewable on appeal.

ID.—PREJUDICAL ERROR.—Even when a decision is erroneous if it does not prejudice the party against whom judgment is rendered the judgment will not be reversed.

ID.—ABUSE OF DISCRETION—INJUSTICE.—An abuse of discretion on the part of the court exists when it plainly appears that an injustice has been committed, and in this case the Supreme Court held that the decision of the trial court refusing to extend time for the first appearance, in the circumstances disclosed in the second motion of the defendant, was an injustice, and if it is considered that said court exercised its discretional power there was also an abuse of such power.

ID.—AMENDMENT OF PLEADINGS—DEMURRER.—As a general rule in sustaining a demurrer the court should permit the party to amend his pleadings and sometimes the court may require the party asking permission to amend his pleadings to state within a reasonable time the nature of the proposed amendment in order to ascertain whether it constitutes a good pleading. And in this particular case the refusal by the court to permit the appellant to amend his pleadings was an error if, as it seems, the court believed it had no power to allow the amendment, otherwise it was an abuse of discretion.

ID.—CONSTRUCTION OF LAW—UNCONSTITUTIONAL LAW—ABSURDITIES.—When the words of a statute taken literally would lead to an absurdity and possibly would render said statute unconstitutional it is the duty of the court to determine by any other means at its command what was the intention of the Legislature.

ID.—Section 9 of the Unlawful Detainer Act of 1905 is discussed and construed in the opinion.

ID.—NONPAYMENT OF RENTAL—PLEADINGS OF DEFENDANT—RECEIPT.—The provisions of section 9 of the Unlawful Detainer Act of 1905 apply only to cases where the defendant in an action of unlawful detainer brought for nonpayment of rentals pleads payment as a defense, but in any other case all lawful defenses and all means of proof which the defendant may lawfully present are admissible, and to construe said section to mean that in all actions of unlawful detainer brought for nonpayment of rentals the only defense of the defendant is the offering in evidence of a receipt or other document evidencing payment would be to go against the intention of the Legislature.

ID.—JURISPRUDENCE OF SUPREME COURT OF SPAIN—STATUTE COPIED FROM SPANISH CODE OF CIVIL PROCEDURE.—The enactment by the Legislature of Porto Rico of the Unlawful Detainer Act, which is a substantial copy of section 1559 *et seq.* of the Spanish Code of Civil Procedure, leads to the presumption that our Legislature intended to adopt said law with the construction given to it by the Supreme Court of Spain.

The facts are stated in the opinion.

*Messrs. Alvarez Nava* and *Domínguez* for appellants.

*Messrs. Juan Hernández López* and *Arturo Aponte, Jr.,* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

On July 3, 1911, the complainants began a suit of unlawful detainer against the defendant corporation. Process was issued the same day and July 8, 1911, was fixed for the first appearance of the defendant. The latter was notified of the proceeding at San Juan on July 3. On July 7 the defendant presented a motion asking for the suspension of the first appearance, requesting that the case be set for a later period. In the motion it was alleged that the defendant's attorneys

were the firm of Alvarez Nava & Domínguez, and that the sole representative of that firm then present in San Juan was the attorney, Jorge Domínguez, and that by reason of a case imperatively set for the same date in San Juan it would be impossible for him to appear on that date in Humacao. The court decided that it could not postpone the first appearance because of the provisions of the fourth section of the unlawful-detainer law of 1905, which fixed the first appearance imperatively within 10 days from the commencement of the suit. In other words, the court did not exercise a discretion.

On July 8, the day set for the first hearing, the defendant, through his attorneys, presented a second motion for a continuance, in which the attorneys set out with more detail the nature of the engagement in San Juan; that the defendant corporation was notified on July 3, and as the case was set for the 8th they had only four days to prepare the complicated defense which was the object of this suit, and as the distance from San Juan to Humacao was 30 miles the defendant ought to have at least two days more; that due to the pressure and haste with which this suit has been set the attorney has not had time to prepare the defense and pleadings necessary to the interest of the defendant; that if the case should be set for any day up to the 13th of the present month such setting would be within the term of 10 days fixed by the special law of unlawful detainer without injuring the rights of anybody or violating any provisions of law. To this motion was appended an affidavit in which the attorney likewise set forth that by reason of this great haste he had been unable to communicate the facts of the defense to any other counsel.

The court, on the same July 8, denied the motion on the ground that it did not comply with the provisions of section 202 of the Code of Civil Procedure; that from the motion it did not appear that sufficient efforts had been made to obtain the proof which should be submitted to the court, and that neither from the motion nor from the affidavit did the merits

of the defense appear. Thereupon the defendant presented an answer in which it first denied that the defendant had violated or broken any of the clauses or stipulations of the contract of rent; and, second, they denied specifically that the defendant corporation had neglected to pay to the complainants the half year's rent which was due on June 26, 1911; and as new matter of defense the defendant set up that on June 30, 1911, at about 2 o'clock in the afternoon, Mr. Manuel Soto came to the office of the said company, at Allen Street in San Juan, as the supposed agent of the complainant, Pedro Más, and presented to an employe of the defendant company, José Vilá, a receipt for the instalment of rent then due to the amount of $750; that Mr. Vilá proceded to write a check for such amount on the Royal Bank of Canada in payment of such rent; that as soon as the check was drawn Mr. Vilá noticed that Mr. Rafael Fabián, the treasurer of such corporation and who has his office opposite to the company, was not there; that it being impossible to obtain his signature to the check and Mr. Vilá knowing that Mr. Fabián would return within half an hour he told this fact to Mr. Soto, requesting him to come back at the end of such time to receive such check which would then have been signed by Mr. Fabián, the only person who had authority to do so; that Mr. Soto acceded and agreed to the request of Mr. Vilá and promised to return in a short time after executing an errand in the Supreme Court of Porto Rico; that Mr. Soto did not come back on that day, and, therefore, on the following day, July 1, Mr. Vilá went to the business office of Mr. Soto to get him to turn over the receipt and receive the check, to which request Mr. Soto excused himself in a vague manner; and two days having gone by, on the 3d of the same month Mr. Vilá returned to the office of Mr. Soto to deliver such check, which Mr. Soto refused to receive, saying that he had already returned the receipt and that he did not have authority to receive such check nor its amount; that the defendant corporation had always been and was then disposed to pay the said rent,

and that the reason why it could not effect the payment on that day was by reason of the negligence and improper conduct of the alleged agent of one of the complainants in not fulfilling his promise to come back the same day and in refusing to accept such check on July 1 and 3 last.

The complainants demurred to the answer and filed a separate demurrer to the new matter set up, namely, to the part where the events that took place between Mr. Soto and Mr. Vilá are described; and said demurrer was based upon section 9 of the unlawful-detainer law. The court struck out the new matter of the answer following the grounds set up in this special demurrer. After the court had sustained the demurrer the defendant asked leave to amend. This leave was refused and the defendant excepted.

The words of section 4 of the law referred to are as follows:

"The action shall be commenced by filing a complaint prepared in accordance with that prescribed in the Code of Civil Procedure for an, ordinary action, and, after the filing thereof, the plaintiff and defendant shall be ordered to appear for a hearing which must be held within 10 days after the commencement of the action." Sess. Laws of 1905, p. 184.

Now, while the statute orders the fixing of the appearance for the first hearing within 10 days, yet the court is not deprived of its discretion to postpone the hearing. The power to postpone resides inherently in courts and the judicial power has been invested in the courts of Porto Rico by section 33 of the Organic Act. Sickness, death, absence, disqualification, and many other things, may arise which may make it indispensable or just that a hearing should be postponed. *People* v. *Logan,* 4 Cal., 188. The provisions of section 4 are not mandatory to the extent of preventing an exercise of the sound discretion of the court. Here, moreover, the action was begun on July 3 and the hearing was set for the 8th. The court might have set the case for any time

not later than July 13 and still have been within the letter of the law. · If the court had exercised its discretion in refusing to accede to the first motion for postponement of the defendant, we might be able to say whether or not there was an abuse. Counsel relied on the bald statement that he had an engagement imperatively set in another court for the same day. The mere fact of engagements in other courts is not sufficient ground. Courts should and generally will extend courtesies to counsel, but the failure to do so is not error. Lawyers who are located in one place and desire to practice in another do so at some risk, but in the case of urgency they may be expected to do what counsel here finally did, namely, employ another lawyer. But as we have seen, the court did not exercise a discretion. This was error. The refusal of the trial court to exercise the discretion vested in it—such refusal being based on the ground of a want of power—is reviewable on appeal. *The Fajardo Development Co.* v. *Estate of Bautista Morfi Martínez,* 17 P. R. R., 1077; *Van Epps* v. *Redfield,* 34 L. R. A., 360; *Leonard* v. *Green,* 30 Minn., 496; *Seibert* v. *Minneapolis, etc., Ry. Co.,* 58 Minn., 58; *Thompson* v. *Warren,* 45 S. E., 912; *Palliser* v. *Home Telephone Co.,* 58 So., 499; *Moran et al.* v. *Bentley,* 42 Atl., 1013; *Sanders* v. *German Fire Ins. Co. of Indiana,* 105 N. W., 787; *Livingston* v. *Taylor,* 63 S. E., 694; 3 Cyc., 326.

There are some cases that hold that where the discretion, if exercised, would necessarily have been unfavorable, the appellate court will not reverse. *Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich., 44, and cases on p. 50.

In other words, while there may be error, yet if it does not prejudice the losing party this court will regard the error, as harmless. Here, however, the complaint shows · that the defendant had a valuable lease which it had been holding for a number of years. The lease was to expire in 1927. The attorney for the defendant came in good faith to the court and asked for a reasonable time in which to prepare his defense. Under the circumstances of the case five days was a

brief period.  The court could have extended the time, even under a strict construction of the law.  Courts are generally opposed to forfeitures and the subsequent proceedings, practically cutting off all defenses, showed that the defendant was injured by this failure to exercise a discretion.

In deciding the motion of July 8, the court cannot be considered to have exercised a discretion.  Although the appellant was making a strong appeal for the exercise of this discretion, the court relied upon other grounds, based on a misconception of the application of the appellant.  The defendant was not asking for a postponement to obtain witnesses and was not alleging on any matter set out in section 202 of the Code of Civil Procedure.  The defendant, looking for an opportunity adequately and in good faith to prepare a defense, and having moved for a continuance, never obtained from the court an exercise of its discretion in this regard.

Even, however, if the action of the court on July 8 should be considered as an exercise of discretion, we should feel constrained to hold that there was an abuse of discretion.  The appellant, in point of fact, had only had four days in which to prepare its defense.  Following even the strict letter of the law, the court could still have set the case up to July 13 and not have injured the complainants by a delay of 48 hours, which was all the defendant finally asked.  It has been held in California that an abuse of discretion arises when it plainly appears that an injustice has been effected.  *Clavey* v. *Lord,* 87 Cal., 419;  see also *Sharon v. Sharon,* 75 Cal., 48.  The actual limited time that defendant was allowed was an injustice.

After the court had overruled the demurrer to the special matter set up by the defendant, the defendant asked leave to amend.  The court, as we have seen, refused the application.  The court may sometimes require the party proposing an amendment to state within a reasonable time the nature of the amendment proposed and concede or refuse the amend-

ment according as it constitutes or does not constitute a good pleading. Generally, however, on the sustaining of the demurrer an amendment should be granted. *The Fajardo Development Co.* v. *Succession Morfi,* 17 P. R. R., 660; *People* v. *Mt. Shasta Mfg. Co.,* 107 Cal., 258.

The demurrer was filed the same day as the answer. The defendant thought he had a valid defense and there was no question of dilatory proceedings and the court should have allowed a reasonable time, even if a few hours, to permit the defendant to frame a new defense. We think that even if the court had been justified in its refusal to postpone the proceedings that the failure to permit an amendment under the circumstances of this case would have been an abuse of discretion.

However, it appears that the court did not exercise a discretion. Following the indication of the complainants in their demurrer, the court struck out new matter alleged by the defendant on the theory that section 9 of the unlawful-detainer act forbade any proof in a case like the present except a receipt or other document showing payment.

Section 9 is as follows:

"When the complaint is founded upon the nonpayment of the rental or price stipulated in the contract, the defendant shall not be allowed to submit any proof except the receipt or some other document showing that the payment has been made. The proofs of both parties shall include the fundamental facts in regard to the principal question at issue."

We are inclined to agree with the appellant that a similar law in the United States which would limit defenses, in cases of actions for nonpayment, to the offering in proof of a receipt or other document evidencing payment would not be due process of law. It is unneccesary to discuss any constitutional question in this case because we do not think that the Legislature intended so to limit the right. To hold otherwise would enable a landlord, either by refusing to accept rent when it is due or by bringing a suit prematurely, to cut off

defenses and so bring a lease to an abrupt and arbitrary end and destroy existing contracts. A stranger might obtain possession of another person's property by the mere averments of ownership, letting and nonpayment, and the tenant could deny neither the letting nor the ownership. Where the words of a statute taken literally would lead to such absurd and possibly unconstitutional results it becomes the duty of the court to determine, by any other means in its power, what was meant by the Legislature. *Holy Trinity Church* v. *United States,* 143 U. S., 457; *Oates* v. *National Bank,* 100 U. S., 239; *Interstate Drainage & Investment Co.* v. *Board of Commissioners of Freeborn Co., Minn.,* 158 Fed., 270.

We think the words of said section here must be limited to cases where the defendant joins issue on the nonpayment and relies on the fact of payment. This would seem to follow partially from the words "showing that the payment has been made." There would be no object in trying to prove payment where the defense was, for example, that the rent was not due, or there was an estoppel, or that defendant had been solemnly released. The section goes on to say: "The proofs of both parties shall include the fundamental facts in regard to the principal question at issue." Where the principal defense is something other than payment, the fundamental facts to be proved could very well be neither a receipt nor a document showing payment.

The construction at which we have arrived would seem to follow from the definition of the action of unlawful detainer. Section 1 is as follows:

"The action of unlawful detainer (*desahucio*) may be commenced by the owners of property, usufructuaries thereof, or by any other person or persons entitled to the enjoyment of such property or by persons claiming under them."

No person is entitled to the enjoyment of property which he has leased to another person where the lessee has committed no act which works a forfeiture of the lease. If the tenant

can show that he has committed no breach of his contract, or that the landlord is estopped by his own act from setting up a breach, the landlord cannot be said to be entitled to the enjoyment of the property and the action of unlawful detainer does not lie. In order to show that the action does not lie the tenant must, when he does not rely on payment, be able to submit his other proof. He must have his day in court.

The same considerations follow from section 1457 of the Civil Code. Thereunder the lessor is obliged to maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract. The landlord cannot avoid his obligation by the mere averment of nonpayment if the tenant can prove, other than by proof of payment, that the contract is a valid subsisting one.

Similar considerations would flow from the Law of Evidence, which went into effect later than the unlawful-detainer act, and especially from sections 32, 34 and 35 of that law.

With the exception of permitting likewise a judicial confession under section 9, the unlawful-detainer act is a virtual copy of sections 1559 *et seq.* of the Spanish Code of Civil Procedure. The presumption is that the Legislature intended to adopt the law here with the construction put upon it by the Supreme Court of Spain. *James* v. *Appel,* 172 U. S., 129; *Copper Queen Mining Co.* v. *Arizona,* 206 U. S., 474; *Hernández* v. *Felicci,* 11 P. R. R., 395. The Supreme Court of Spain has held construing the section corresponding to 9 of the unlawful-detainer law that where the defense is nonpayment other proof may be submitted. Judgments of the Supreme Court of Spain of January 22, 1896; January 5, 1888; January 25, 1886.

In the case at bar the court's action in striking out the defenses of the defendant, and probably in its refusal to permit an amendment, was based on an erroneous conception of the law. We have purposely refrained from discussing the validity of the special defense as presented or now proposed, because, in the trial court, the demurrer and the consequent.

striking out by the court was addressed to the sole question of right of defendant to prove anything but payment, and because we do not consider that the question of the sufficiency of the defense was sufficiently argued. The defendant was offering to amend generally under circumstances where, as a matter of fact, he had been hurried to trial. Courts are, as we have said, generally loath to declare the forfeiture of an existing contract and the defendant was offering to show, in good faith, that there were circumstances which explained the failure to pay and constituted a defense. It was entitled to an exercise of the court's discretion on its application to amend, and the failure to exercise it was likewise error.

The judgment must be reversed and the case remanded with instructions to set a new day for the first appearance of the defendant.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.